Case No. 21-1516, Gene Bell Jr v. City of Southfield, MI, et al. Oral argument not to exceed 15 minutes per side. Ms. Henderson for the appellant. Good morning, Your Honors. Callie Henderson on behalf of the three defendant officers, Anthony Korkus, Arthur Bridgeforth, and Thomas Linguetz. Your Honor, we are here on an appeal of the district court's denial of the defendant's Rule 12 motion for a judgment on the pleadings. Here, we have a video of the entire incident, and not just one video, but three videos that provide the court with all the facts that it needs to know in order to decide the legal issues of qualified immunity in this case. And it is those legal determinations made by the district court that defendants now take issue with. The issues here on appeal are whether the district court properly applied the doctrines of qualified immunity and the objective reasonable analysis of Graham. Can I ask you just a fact question? What does no record mean? When the officer looks and gets back a no record, does that mean expired or something different? Your Honor, I'm not clear on that. As it's been pledged that he had an expired plate, that there was no record, it wasn't coming back to anyone, as I understand. And I believe that's what Mr. Bell actually had the issue with in the... So does that mean expired or a nonexistent plate? As far as I know, it means expired, Your Honor. Okay. Yes. And what we do know is that when the officers did approach the vehicle, they asked Mr. Bell to identify himself. Officer Korkus asked for his identification, which he is legally allowed to do. So we watched the videos, obviously, and as I understand your argument, you're saying that... I'll just read you. You block quote in your brief your argument, and it says that he both physically, resisted both physically and verbally. If we can't figure out if he resisted physically from the video, then you agree we don't have jurisdiction to resolve that fact. Does that mean that claim goes forward? Yes, I would. But I would posit that there are objective points of resistance, not just verbal, not just physical. He refused to comply with commands, which this court has recognized that just the refusal to comply with the commands is an act of resistance. And we have that coupled here with verbal resistance. So let me ask, because I agree with that, but then when your officer says, I'm summarizing, I'm going to place you under arrest, he basically says, OK, I'll get out. Can you then still use physical force? Your Honor, at that point, it's not a question of how plaintiff wants to exit the vehicle. From this, we must view this from the perspective of an objectively reasonable officer and how they were trying to control the scene. They never said, and plaintiff has alleged that from the start, the officers were going to forcibly remove Mr. Bell from the vehicle. However, all we see from the video is that Officer Corkus reaches in to unlock the door, which we can also see Officer Bridgefort doing on the other side from his video. And it's there that plaintiff admits that he began to struggle with the officers inside of the vehicle. And it is there. Where does he admit that? In his briefing on appeal, he acknowledged that within the car there was a struggle with Officer Corkus. And we see that on the video. We see that he struggles with Officer Corkus in the video. We see that he makes his hand move towards the door. We see that Officer Corkus then has to physically restrain his hand. And we see that Officer Corkus is physically restraining him. And plaintiff has acknowledged there was a struggle inside the vehicle. Well, but the question is how was that initiated? You're making it sound like he started doing something and the officer responded. Yes, Your Honor. But that's not clear from the video. Well, and I would posit that it's clear that Mr. Bell does make a movement in the vehicle, such that the officers then reasonably perceived that movement as something they had to control as it was threatening. Based on the fact that we know Mr. Bell had already, once there had been some indications that he wasn't initially going to stop. We see that in the video. We see him hit his brakes. We see him swerve to stop and then not stop. And then we see that he tells Officer Corkus during the stop that he's going to move his vehicle. And Officer Corkus tells him not to move his vehicle. We see him apply the brakes to move the vehicle. I mean, you're putting a gloss on that that is not apparent in the video. A lot of people, he clearly obeyed the order to stop. And when he said he was going to move his vehicle and the officers said don't, he immediately put it, you know, didn't. Just did not move the car. You're right that he wasn't giving his ID and the rest of the vehicle information. But I think you're putting your best gloss on it, which we don't do. I think what we have to do, Your Honor, is view those actions because they did occur. We can't dispute that they did occur. We have to view them from the perspective of an objectively reasonable officer. And that's what we stress that the district court hasn't done. I don't believe I'm glossing over them. I'm viewing them from the perspective of an objectively reasonable officer and how that officer would interpret those actions. And that's what I believe gave the officers the justifications for the actions that they took. And each one builds upon itself such that when Mr. Bell resisted Officer Corkish telling him we're going to get out our way, and then he goes to make some movement and Officer Corkish has to prevent that movement. The fact that Mr. Bell wanted to do things his way was not his decision to make at that time. Well, I think he, yes, he wanted to get out of the car as opposed to being dragged out of the car and thrown on the ground. And I don't believe that the officers were going to take that away from him until there was the physical contact with Officer Corkish, until there was the movement by Mr. Bell. The officers there still have some concern for their safety. I don't see where he concedes in his brief that he physically harmed the officer in any fashion. I'm sorry if I misspoke that he physically harmed the officer, but that there was a struggle inside the vehicle. Well, that's pretty clear from the video. There's a struggle, but the question is, did the officer initiate the struggle or did he? Or are you saying the officer can initiate the struggle and if he physically resists, that's enough? I believe there's two distinctions there. I think it's first that there was the movement towards the door handle when Officer Corkish was reaching in. That's undisputed. We can see that. And that's what I think gave Officer Corkish then the justification to restrain Mr. Bell's hand, which is then where the struggle continues. I'm sorry. The officer's reaching in. We can see that from the video. And then what do you think we can see next? Mr. Bell makes a movement towards the door handle, which is why Officer Corkish restrains his hand. Officer Corkish does grab Mr. Bell's hand. But he's moving towards the door handle, not towards the officer. Wouldn't you need him to grab onto the officer? No, Your Honor. Officer Corkish was moving towards the same location at the same time, such that it would be reasonable for an officer to interpret that if- He says, I'm sorry to interrupt you, but he says when he's reaching in to unlock the door, what's clear is Mr. Bell does not reach across with his right arm, right? Because you can see he's got a phone in that hand. He's probably videoing the officer, if I had to guess. But he puts his left hand up. And as Judge Larson just said, that can be consistent with opening the door, consistent with what he said, I'm going to get out of the car. Once they say we're going to arrest you, OK, I'll get out of the car. Why wouldn't that be consistent with opening the door? Your Honor, as we hear from Officer Corkish throughout the video, from an objectively reasonable officer's perspective, it was not unreasonable for Officer Corkish to fear Mr. Bell moving his hand towards and trying to stop Officer Corkish from what he was trying to do. OK, I understand that. So your argument, just so I'm clear, is he was justified in removing him from the car in the way he did because in addition to all the verbal resistance, he engaged in physical resistance. Yes, Your Honor. And if we can't determine whether he engaged in physical resistance, then you agree that we have to affirm, no matter what the video shows, if we can't figure it out from the video. Or maybe we lack jurisdiction because there's dispute effect. I mean, affirm or dismiss. I would say that offering some guidance on that point as to whether where the question of force would come into play would be helpful in this case, even if this Court were to find that they can't see specifically on that video, as opposed to just outright dismissing without jurisdiction, which is part of why we appeal this case now, is for further direction from this Court because we do believe that you do see certain undisputed movements in that video. And I know the Court keeps coming back to the fact that Mr. Bell was saying, I'll get out of the car, and that's why I, in my brief, direct this Court back to the Ashford opinion where this Court said that even though... Look, I may agree with you, but the point still is if we can't determine if he's opening the door or reaching to assault the officer or grab the officer's arm, then from the video, which I'll just tell you, I've watched it 20 different ways, and it's not crystal clear to me, then I get the point about guidance, but then we don't have jurisdiction to resolve that dispute, and that dispute, by your own argument, is critical to us determining whether you're entitled to qualified immunity, correct? No, Your Honor, and perhaps that's where I misunderstood, because my argument is that the movement itself, whether it was to open the door or to assault the officer, Officer Corkus was reasonable in interpreting it as a potential to assault him to obstruct what he was trying to do based on those other circumstances. So whether he actually did assault and ended up assaulting him, Officer Corkus was reasonable interpreting that as something he needed to prevent, and that's why he was justified in taking hold of Mr. Bell. Let me give you one more thing, and I'm just going to give you... So the video, may I ask this question? Has to blatantly contradict, according to the Supreme Court, the plaintiff's version at each point, right? Correct? The allegations. Yes, the allegations. And I would say that that would be the allegation of excessive force here. Okay, but it has to blatantly contradict. If we're not sure, I get your point. I totally get your point. Then we can't consider that portion. In other words, it's got to be, like as clear as his 25 times asking for license and registration, clear as day. That blatantly contradicts the lack of that in the complaint. But what I'm saying is, if we're not sure what's going on with the arms, then it doesn't blatantly contradict their assertion, does it? So I'm coming at you two different ways. The first was the jurisdictional way. The second is, can I even consider the video in assessing the officer's claim? Yes, and I believe that... On that point, I'm sorry. On that point, I think the court has already acknowledged that you do see, and I don't think Mr. Bell has disputed, that he makes a movement. He's saying, I'm going to get out of the car myself. He makes a movement towards the door handle. I don't think that is disputed, and I think that is clear in the video. I think the questions that the district court and how it's been framed today is, was that assaultive or was that to get out of the vehicle his own way? I don't think that makes a difference to whether this court has jurisdiction, because when viewed from the perspective of a reasonable officer, it was not unreasonable for Officer Korkus to believe, either one, that he had to control that movement and prevent that movement, which justified him taking hold of the hand, which led to the further struggle. Does that make any difference that the officer has already told Mr. Bell? So Mr. Bell says, after saying 17 times, I'm not going to give you my license and registration. So I get that. That's already happened. But then Mr. Bell says, okay, I'm going to get out of the car. Does that go to the reasonableness of the officer's interpretation of his movement? I would get it if Mr. Bell had not then said, okay, I'm going to get out of the car. And the officer's already said, no, you're not. You're doing it my way. If he had just made a movement without saying, I'm going to get out of the car, why is the officer reasonable in thinking anything other than that he's going to reach for the door handle to get out of the car? Well, certainly, Your Honor, I think it does make a difference to the fact that you pointed out that Officer Korkus actually told Mr. Bell twice that they were going to do it our way in regards to the police, such that Mr. Bell was on notice that the officers were going to control how he got out of the car, such that Mr. Bell saying, no, I'm going to get out of the car on my own, signals not only further resistance to the officers, but that they have further need to control the scene here, and that Mr. Bell is not going to give that to them. And there is, the Supreme Court has recognized, not only an interest in knowing who an individual is because of the threat that they could present, but of controlling a scene for an officer and the safety needs there, such that Mr. Bell indicated he was going to ignore that. And Officer Korkus had a need to control that scene and the method in which Mr. Bell was removed from the vehicle, which is something Mr. Bell was trying to take away from him. And I see that my time has expired, so unless the Court has further questions right now, thank you. Good morning. My name is Ben Gownick and I represent Eugene Bell. May it please the Court, as the Court knows that this is an interlocutory appeal of the District Court judge's I don't really know how much more I can add other than I hope a jury interprets the District Court judge's interpretation of the video in the same way. And I ask you about, so at your brief you concede we can consider the video at this stage if it blatantly contradicts, to use the language of the Supreme Court, right? Correct. Okay, so I've got two questions. Does that mean, so your friend says, well, we can all see what I think is his left arm going up. Does that mean, that is pretty clear, can we consider that, is my first question? Well... The left arm going up, the significance of that I'm not sure about, but I'm just asking, can we consider it? I don't think so for this, and I can tell you the reason why. The reason is, I think you have to, in order to consider the video, it has to completely capture the defendant's position. And in this case, it doesn't... In what sense? I don't see that in Scott B. Harris, so explain that to me. I'm not sure I understand completely capture, what you mean by that. I should say, if there's something left to interpretation, I think the court loses jurisdiction. Well, I don't know if we lose jurisdiction, it might not blatantly contradict. So let me walk backwards a little. I'll give you some hypos, and maybe you and I can flesh this out, because I think it's not an easy question. So, complaint says, I got shot, police officers had no justification, so I'm bringing an excessive force claim. Okay, pure hypo. That's all the complaint says, it's pretty bare bones. You agree that without provocation, I got shot, da-da-da-da-da, or it doesn't even say without provocation. I got shot, excessive force, officers not entitled to qualified immunity just on my complaint, right? They now show a video, and the video shows the plaintiff pulled a gun out and aimed it at the officers, and then the officers shot. Okay, so everything else is consistent with the complaint except the pulling of the gun out. You agree that contradicts, and so we can consider the fact that they pulled the gun out, right? I would agree. Okay, now we've got complaint, now I'm going to use letters on you just because I can think up a hypo, but this might be easier. It alleges A, B, and C. A, B, and C, the video also shows, but the video shows D, E, and F. You agree D, E, and F come in? Yes, okay. Now we've got G. Okay, here's where it gets hard. G is the struggle, and it's unclear, and what I'm trying to figure out because the defendants admit comes down to G, it's unclear. You're saying don't have jurisdiction to resolve G, so this claim goes back. That's your argument, or is it something else? That's correct. Okay, I got it now. No, that's absolutely correct, and I would just point out that Mr. Bell said on at least two occasions when the officer told him you're under arrest now, you should have, you know, you should have obeyed my command, or you may not have said those words, but when he told him he's under arrest, Mr. Bell said I will get out of the vehicle, and then he said, I think, again, I'm getting out of the vehicle, and I mean it just shows that he was in compliance with Officer Korkis's. Do they have to let him get out if, just assume this, I'm not saying this is this case, but he's threatening to drive away. He puts the car in drive. He has expired plates. He's noncompliant the entire time and belligerent. Do they have to, do officers have to let someone under all those circumstances get out of the car? Well, there's other circumstances, too, that come into play in this case. Okay, so give me the, tell me the answer to mine, and then give me those circumstances that distinguish it from that. Sure. It depends if the person appears to be a risk. A person can be angry. That's in the officers. We all agree that's from the officer's perspective. So if they think he's a risk based on all of these things, then the question for us is, is that fair from an officer's perspective under those circumstances, right? And so now give us the factors that you think distinguish that from the hypo I just gave you. Okay. This case happened at 430 in the afternoon, I believe even on a weekday. It happened while it was daylight out. Weather was great. It wasn't in a high crime area. Does that matter? I mean, officers have been shot, I mean, the numbers are staggering, but officers have been shot in daylight at 430 in non-high crime areas when they initiate pullovers. I get that, but when they activated the lights, Mr. Bell immediately tried to pull over. He missed a driveway, which, I mean, the video and audio captures what Mr. Korkus said, and then he pulled in as directed into the parking lot. It goes, it's interesting that the defendant initiated this investigation. It wasn't over a moving violation, per se. It was just a random investigation into a license plate of a vehicle driven by an African-American man. But you don't have an equal protection claim. No, I don't. I don't. So, in any event, to that point, Mr. Bell has complied, and the infraction right now, expired plate, is a reasonably minor offense. And we're in a time period now where Mr. Bell knows that he hasn't committed a moving violation. He's wondering why he's pulled over. And he's probably thinking, it's because I'm black. I mean, because we hear a lot of it in the media. We see a lot of it actually going on. So he's legitimately upset. But when the officer tells him, like, look, you're under arrest now, you know, and he asked him, and, like, the district court judge asked a good question. He said, would we be here if Mr. Bell would have just given him the ID and registration? And my answer, I believe, was probably not. But we would likely not be here if. . . At some point, I get all that. I'm totally with you on that. At what point is the officer obligated to put up with what looked like a belligerent Mr. Bell? Look, maybe the officer's reason is totally illegitimate to pull him over, although he did have expired plates. But maybe he shouldn't have run the plates. I don't know. I mean, that's beside the point. What happens in the encounter is the officer walks up to the car and says, this is something that every person in America that's been pulled over gets asked. Can I have your license, registration, proof of insurance? I can't remember the three, but those are the three I get asked at least. You usually just give them to the officer, they write you a ticket, and you go about your way. That's true, but you missed a key part of that. In every police encounter that I've had in my life, I mean, traffic tickets, there's been a few, the police officer has been usually really polite and said, good afternoon. Do you know why I pulled you over? Sometimes, but I've encountered belligerent officers too. I mean, they're having a bad day, whatever. I always comply. I never have a problem. Right, but the point is they generally tell you why they're pulling you over. And this wasn't a case like it was a homicide investigation or there was some risk. . . At some point, but at some point, why not give the license and registration? And once you're being belligerent, for how long does an officer have an obligation before? I mean, could you do it for 20 minutes before the officer initiates? No, but the officer could have simply said, look, I've asked you for your license and registration. You're obviously not complying. I have to arrest you for resisting and obstructing. Step out of the car and let me put cuffs on you. If they don't do that, then the officer can escalate it to do what's reasonably necessary to get Mr. Bell out of the vehicle. He never asked Mr. Bell to get out of the vehicle. And when he told Mr. Bell that he was going to arrest him, or that's it. . . And he did ask him numerous times, and I can see that. Mr. Bell said twice, I'm going to get out of the vehicle. What's your best case for the proposition that an officer may not use force to pull somebody out of a vehicle once they have said, even after asking 20 times. Once they have said, okay, now I will comply. Because if you don't have one, I wonder whether it's. . . I mean, this is a very interesting debate where the line is. But that makes me wonder whether it's clearly established. Well, I think what you have to look at to see if the constitutional right was clearly established, I think you have to look at the totality of the circumstances that the plaintiff alleges. And in this case, we allege that Mr. Bell was cooperating and he was going to get out of the vehicle to be placed under arrest. That he's cooperating is blatantly contrary. Well, I mean, that may be too strong of a word. What's the case? Pardon me? If we have the burden to show it's clearly established that the officer can't do this, what's the case? Like, what case should we look at? Well, I think you should look at the cases that were cited in the brief. Graham versus O'Connor. I think when you look at the totality. . . Graham's too general, right? There has to be. . . it has to be specific. I mean, the Supreme Court's been crystal clear on that. Repeatedly reversing circuits, including our own, that aren't specific. Don't point to a specific case. No, I understand. I don't know whether there's an identical factual case to this one, where someone has said, was initially not been compliant with a police officer in producing their driver's license and registration, and then been told that they're going to be placed under arrest. I don't think it has to be that level of specificity. Yeah, what's your closest? Yeah, give us your best. I would have to look at the. . . I'm sorry, I'm just drawing a blank right now. That's fair. I apologize. Yeah, we can look at the cases cited in your brief. Are they the cases cited in your brief? Yes, they are the cases cited in the brief. All right, we'll look at those. I think the essence of what counsel is saying is that you look at the video and everything that leads up to that point, and the reason why your client moved his hand is irrelevant. That once he did that and moved toward where the officer was, a reasonable officer would have restrained him or exercised control over him without regard to what his motivation was in moving his hand. How do you respond to that? I would respond if that my client's cause of action is still there because he said he was going to get out of the vehicle, almost simultaneously with that, I believe. So let me ask. He says, I'm going to get out of the vehicle, and he reaches for something. Can the officers take him out forcibly at that point? Someone who's been verbally resistant. I can tell you what I think a good officer or a reasonable officer would do, and they would say, okay, if you're going to get out, just slowly get out. So my question is, he says, I'm going to get out. The officer reaches in and unlocks the door, and he reaches down on the ground. What can the officer do? The officer doesn't know what he's reaching for. Can they take him out? If the officer doesn't know what he's reaching for, I believe so. Yeah, so if he's reaching towards the officer and the officer doesn't know, is he going to hit me? Is he going to open the door? Is he going to grab my arm and pull me into the car? Well, the officer was reaching in. It's our theory. I think it's undisputed the officer reaches in to unlock the door. Or it looks like it. Okay, I'm not going to make that call, but he reaches in. He reaches in. My point is, let's assume he said we're going to do it our way, so now he's reaching in to get him. If your guy reaches at him, isn't it reasonable for the officer to think he's about to engage in physical altercation? Not when he says that he's going to get out of the vehicle. So they have to accept that, regardless. What if they think he's armed? Do they have to accept it? I don't think they had a reason to believe he was armed. But I'm saying, what if they do think? If there's a reason to believe or something that they can point to that suggests that he's armed, they have the right to react to that. So now he's been belligerent. They think this is a hostile gesture. It seems in the context of the video where 20 to 25 times he's asked for license and registration without any compliance, and the tone of voices was escalating. The voices were escalating. I can't dispute that. But I can also just mention or comment on the fact that Mr. Bell asked the officer probably 15 to 20 times why he was pulled over. That's all I have on it. No, thank you. Thank you. I just want to address a couple of things. Can I ask just a question that's been going on? Why didn't the officer tell him why he pulled him over? I mean, your friend's right. Often officers tell us why they're pulling us over. Well, I'll make two points real quick because I can answer that. But first I will say that there's no law that obligates, there's no case law either that obligates the officer to. And there's very important reasons. Yeah, but there's common civility. Right, Your Honor. But there's also reasons of officer safety here. And when we have an expired plate, as it's been explained to me by the officers, that expired plate is not coming back to a driver then. So he needs to identify who this person is in the car, such that getting the information of who this person is in the car first before giving them information about the stop is important to allow him to assess the danger of that situation. Let me ask you a different question. Why did he call a grown man boy? Your Honor, again, I can explain to you what was explained to me by the officers, is that his common just phraseology that he uses with his friends within his community, that it wasn't a racial term. But I would again say that that is besides the point as to what we're the force was excessive, such that his subjective intentions, those comments do not have any bearing on whether the force was excessive. And I think the court touched on one of the main arguments in our briefing is that plaintiff and the district court both failed to point to any case law that clearly established that forcibly removing Mr. Bell under these short circumstances was unwarranted. And that's what we addressed in primarily, largely in our reply brief. Plaintiff relied on two unpublished cases in their briefing. Folks and, I'm going to mispronounce this, S-O-L-O-V-Y. Both unpublished cases here where there was undisputed, there was no resistance from the plaintiffs in those cases. And here the video, we know. And plaintiff has already acknowledged through his plea. He was obstructing the officer's investigation. He was resisting what they were doing. So neither of those are controlling here. But the case law distinguishes between active and passive resistance, right? Correct. And at that point, it was only passive resistance. At that point, not only did we have his verbal resistance that he wasn't going to give, he wanted to know what was going on, but he was also ignoring the commands, which is also another form of resistance. Not complying is resistance in and of itself, coupled with verbal resistance. But that's passive resistance. Yes, Your Honor. And that active resistance is required by the case law to use a taser. Plaintiff has not pointed to any case law that said active resistance, which is these multiple different actions, is required for a forcible removal. That has not been clearly established. But what if they came to my car or your car and said, license registration, you said what I do wrong. And it went back for a minute. Can they just forcibly pull you out of the car at that point? No, Your Honor. I think we also have some other factors here. I'm engaged in passive resistance. Why can't they pull me out? This is where we also have where there were prior indications that Bell presented, and it might not have been as severe of a threat as some of the cases that we cited in our brief where there was flight, that he could possibly flee. We have a size differential. As Judge White pointed out to you, I think, when he did put his car, like his lights come on, it looks like he's going to drive away, and the officer says you better not do that, and he obviously puts it in park again. Right? Right. And then that would be asking the officers to trust that he's not going to try to do that again. But he's blocked in from both sides at that point. Yes, Your Honor. That's never, in my experience, and based on the case law of this circuit, there are cases where several times vehicles have been rammed. So that's never actually prevented escape. I mean, officers do that for a reason because people still try to flee. But at that point, they're not at risk. Right? I mean, when they're blocked in, he's not moving the car. If anything, he's ramming a police car. That doesn't remove the risk to the officers at that point, and I think that was similar to the situation that this Court saw in the Ashford case. That car was blocked in. They had cars from three sides of it, and the officers were on the other side. The car was still running. And this Court explained that there was still a risk to the officers. If plaintiff took off and made one last attempt to elude the officers, the officers could get dragged into the vehicle. They could get involved in that crash somehow. This Court recognized that danger. They had engaged in a fairly lengthy conversation, if you want to call it that, and he just sat there. I mean, there was that one time where he might have been trying to park someplace. He immediately obeyed. And he's sitting there talking to him. He's not trying to go anyplace. Your Honor, in that moment, that's correct, but the officers are not directed to ignore what had previously happened, such that they can still act with that in mind. And we also consider that they did have this debate going back and forth, and Mr. Bell was told, no, we're going to do it our way. There was some more back and forth. You hear Officer Bridgeforth say, come on, man, you're going to get tasered. You're going to get tased, my man. And yet Mr. Bell still doesn't want to follow the officer's directions. So he's been warned that there's going to be physical force, that there's going to be a taser. And even at that point, the officers still don't use the taser in the car. They don't use it until he's struggling with them on the ground. But Mr. Bell was given several warnings by the officers as to what was going to occur, that he was going to get arrested, that they were going to use physical force to do so, that up and through a taser, he was warned a taser would be used. And Mr. Bell still decided to disregard. Did you have another question? No, I'm fine. Okay, thank you. Thank you very much, Your Honor. Thank you both. Case closed.